1   SETH E. PIERCE (SBN 186576)
      sep@msk.com
2   AARON M. WAIS (SBN 250671)
      amw@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, CA  90064-1683
    Telephone: (310) 312-2000
5   Facsimile: (310) 312-3100

6   NAOMI STRAUS (SBN 287804)
      nxs@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    181 N Street N.W., 8th Floor
8   Washington, DC 20036
    Telephone: (202) 355-7900
9   Facsimile: (202) 355-7899

10  Attorneys for Plaintiff
    American Bullion, Inc.

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14  AMERICAN BULLION, INC.,              CASE NO. CV14-01873-DDP(ASx)

15            Plaintiff,                 The Honorable Dean D. Pregerson

16       v.                             **NOTICE OF MOTION AND
                                         MOTION OF PLAINTIFF
17  REGAL ASSETS, LLC; Tyler            AMERICAN BULLION, INC.'S
    Gallagher, an individual; Kelly Felix, an   MOTION FOR PRELIMINARY
18  individual; and Does 1-10, inclusive,   INJUNCTION AGAINST
                                         DEFENDANTS REGAL ASSETS,
19            Defendants.                LLC AND TYLER GALLAGHER;**

20                                      **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT**
21

22                                      Time:    August 18, 2014
                                        Date:    10:00 AM
23                                      Ctrm:    3

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6278195.1

**TO REGAL ASSETS, LLC AND TYLER GALLAGHER AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on August 18, 2014, at 10:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 312 North Spring Street Los Angeles, California 90012, Plaintiff American Bullion, Inc. ("Plaintiff" or "American Bullion") will and hereby does move for preliminary mandatory and prohibitory injunctive relief against Defendants Regal Assets, LLC ("Regal") and Tyler Gallagher ("Gallagher," and collectively with Regal, "Defendants), as set forth in the Proposed Order being filed concurrently with this Motion.

This Motion is brought on the grounds that entry of a preliminary injunction is appropriate in this case because American Bullion has establish that it is [1] likely to succeed on the merits, [2] that it is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Herb Reed v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1247 (9th Cir. 2013), *quoting Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, American Bullion has shown (1) a combination of probable success on the merits and the possibility of irreparable harm or (2) raised serious questions and the balance of hardships tips in favor of an injunction by demonstrating a fair chance of success on the merits and a significant threat of irreparable injury. *Duck Dive v. Heydari*, 2014 U.S. Dist. LEXIS 42313, 3 (C.D. Cal. Mar. 27, 2014) (Pregerson, Dean D., J) (*citing Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)).

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Aaron M. Wais, James Berkley, Richard Warren and Brian Meert, any Reply Memorandum of Points and Authorities, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at or before the time of the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 9, 2014.  The parties were unable to reach a resolution to eliminate the necessity of a hearing on Plaintiff's motion.

DATED: JULY 21, 2014          SETH E. PIERCE
                              AARON M. WAIS
                              NAOMI STRAUS
                              MITCHELL SILBERBERG & KNUPP LLP


                              By: _____/s/ Aaron M. Wais_____
                                    Aaron M. Wais (SBN 250671)
                                    Attorneys for Plaintiff
                                    American Bullion, Inc.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   RELEVANT FACTUAL BACKGROUND.............................................6

    A.    Plaintiff And Regal Are Direct Competitors. .......................6

    B.    Gallagher Is An Owner Of And CEO For Regal. ................7

    C.    Defendants' Illegal Marketing Campaign.............................7

    D.    Defendants Oversee and Direct The Illegal Marketing Campaign.....12

        1.    Defendants do not police or deter the illicit advertising. .........12

        2.    Defendants provide illicit content to the Regal Sites. ..............13

        3.    Defendants compensate the affiliates for the leads generated by their false and deceptive marketing. ....................................15

        4.    Regal is benefitting immensely from the affiliate program. ....15

    E.    Deceptive Campaign Continues, Irreparably Damaging Plaintiff......16

III.   THE COURT SHOULD ENTER A PRELIMINARY INJUNCTION AGAINST DEFENDANTS.................................................................16

    A.    Legal Standard ................................................................16

    B.    All Factors Warrant Entry of A Preliminary Injunction ....................17

        1.    American Bullion Is Likely To Succeed On The Merits..........17

            a.    False Advertising................................................17

            b.    Unfair Business Practices...................................19

            c.    Other Claims......................................................20

    C.    American Bullion Has Suffered And Will Continue To Suffer Irreparable Harm Without Preliminary Relief. ..................................21

        1.    Plaintiff Is Entitled to Presumption of Irreparable Harm.........21

        2.    Plaintiff Has Demonstrated Irreparable Harm.........................22

|     | D. | Balance of Equities Weighs Decidedly In Plaintiff's Favor.............. | 23 |
|     | E. | Enjoining The Regal Sites Serves The Public Interest. ..................... | 24 |
| IV. | CONCLUSION........................................................................................... | | 25 |

Mitchell
Silberberg &
Knupp LLP

6278195.1

ii

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arcamuzi v. Continental Air Lines, Inc.,*
819 F.2d 935 (9th Cir. 1987) ........................................................................ 17

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ............................................................................ 18, 19

*Certainteed Corp. v. Brokers,*
2010 U.S. Dist. LEXIS 64410 (W.D. Wash. June 28, 2010) ...................... 23, 24

*City of Carlsbad v. Shah,*
850 F. Supp. 2d 1087 (S.D. Cal. 2012) ........................................................ 24

*Duck Dive v. Heydari,*
2014 U.S. Dist. LEXIS 42313 (C.D. Cal. Mar. 27, 2014) .................... 17, 22, 25

*eAdGear v. Liu,*
2012 U.S. Dist. LEXIS 86364 (N.D. Cal. June 21, 2012) ............................. 19

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
654 F.3d 989 (9th Cir. 2011) ......................................................................... 22

*Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.,*
593 F. Supp. 2d 1088 (N.D. Cal. 2009) *aff'd*, 616 F.3d 1357 (Fed. Cir.
2010) ............................................................................................................. 22

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
736 F.3d 1239 (9th Cir. 2013) ....................................................................... 16

*Imperial v. Castruita,*
418 F. Supp. 2d 1174, 1181 (C.D. Cal. 2006) ................................................ 20

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.,*
2011 U.S. Dist. LEXIS 144425 (N.D. Cal. 2011) ...................... 17, 18, 19, 20, 25

*Johnson & Johnson-Merck Consumer Pharm. Co. v. P&G,*
285 F. Supp. 2d 389 (S.D.N.Y. 2003) ........................................................ 18, 19

*Kalologie Franchising LLC v. Kalologie Skincare Med. Group of Cal.,*
2014 U.S. Dist. LEXIS 32223 (C.D. Cal. Mar. 11, 2014) .............................. 23

*Kasky v. Nike, Inc.,*
27 Cal. 4th 939 (2002) .................................................................................. 18

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

### TABLE OF AUTHORITIES
#### (Cont'd)

**Page(s)**

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134, 1153 (2003)..................................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S. Ct. 1377 (2014)..........................................................................17

*Maxim Integrated Prods. v. Quintana,*
    654 F. Supp. 2d 1024 (N.D. Cal. 2009)..................................................23

*Moroccanoil, Inc. v. Moroccan Gold, LLC,*
    590 F. Supp. 2d 1271 (C.D. Cal. 2008)..........................................23, 25

*MySpace, Inc. v. Wallace,*
    498 F. Supp. 2d 1293 (C.D. Cal. 2007)..................................................22

*Nordstrom, Inc. v. Nomorerack Retail Gr., Inc.,*
    2013 U.S. Dist. LEXIS 41810 (W.D. Wash. Mar. 25, 2013)..............21

*Otter Prods., LLC v. Berrios,*
    2013 U.S. Dist. LEXIS 147139 (C.D. Cal. Oct. 10, 2013) ..................21

*Robinson v. Delicious Vinyl Records, Inc.,*
    2013 U.S. Dist. LEXIS 109279 (C.D. Cal. Aug. 1, 2013) ..................22

*Sanderson Farms, Inc. v Tyson Foods, Inc.,*
    547 F. Supp. 2d 491 (D. Md. 2008) ......................................................22

*Savage v. Pac. Gas & Elec. Co.,*
    21 Cal. App. 4th at 434, 448 (1993) ......................................................21

*Sci. of Skincare, LLC v. Phytoceuticals, Inc.,*
    2009 U.S. Dist. LEXIS 58241 (C.D. Cal. July 8, 2009) ....................20

*Stuhlbarg Int'l Sales Co. v. John D. Brush and Co., Inc.,*
    240 F.3d 832 (9th Cir. 2001) ................................................................22

*Western Directories, Inc. v. Golden Guide Directories, Inc.,*
    2009 U.S. Dist. LEXIS 52023 (N.D. Cal. June 8, 2009) ..............23, 24

*Wetzel's Pretzels, LLC v. Johnson,*
    797 F. Supp. 2d 1020 (C.D. Cal. 2011)..................................................23

#### STATUTES

Mitchell
Silberberg &
Knupp LLP

6278195.1

## TABLE OF AUTHORITIES
### (Cont'd)

**Page(s)**

California Business & Professions Code

    § 17200 ..................................................................................................... 19

    § 17500 ............................................................................................... 18, 19

### OTHER AUTHORITIES

16 C.F.R.  (FTC Rev. Endorsement Guides)

    § 255 ............................................................................................................7

    § 255.1(a) ....................................................................................................7

    § 255.1(d) ....................................................................................................8

    § 255.5 .........................................................................................................7

http://www.ftc.gov/news-events/press-releases/2013/03/ftc-staff-revises-
    online-advertising-disclosure-guidelines ...............................................7

http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-
    publishes-final-guides-governing-endorsements-
    testimonials/091005revisedendorsementguides.pdf ...............................7

http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-
    revises-online-advertising-disclosure-
    guidelines/130312dotcomdisclosures.pdf ..............................................8

Mitchell
Silberberg &
Knupp LLP

6278195.1

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

## I.  INTRODUCTION

Plaintiff commenced this lawsuit to stop Defendants Regal Assets, LLC's ("Regal") and Tyler Gallagher's ("Gallagher," and collectively with Regal, "Defendants") concerted deceptive advertising campaign against Plaintiff American Bullion, Inc. ("Plaintiff" or "American Bullion") – which uses fake and defamatory review websites to direct Plaintiff's customers and potential customers to Defendants' competing business.  Plaintiff is losing customers every day based on these fake review websites and the damage to its reputation is devastating.[1]

Plaintiff is (more than) likely to succeed on the merits of its claims and the damage to its reputation and business is both irreparable and ongoing.  Plaintiff cannot wait for a trial on the merits to stop such clearly fraudulent and damaging marketing, and should not have to do so.  Preliminary injunctive relief was designed for just this circumstance and should be entered here.

*** 

Kelly Felix ("Felix"), Regal's co-owner/marketing director and the third defendant in this matter, defaulted rather than defend his misconduct.  *See* Dkt. 16.  On July 15, 2014, this Court entered default judgment and a permanent injunction against Felix – which Felix is defying.  Dkt. 35, 37, and 38 (Contempt Motion).  This Motion does not target Felix; his responsibility and liability have now been determined.  Rather, Plaintiff now seeks to enjoin Regal and Gallagher's separate participation in the scheme – to cut off the money and support that allows Felix's hydra-headed campaign to continue and illegally succeed.  While, of necessity, there is some evidentiary overlap, this Motion focuses on Regal and Gallagher.

*** 

Plaintiff and Regal compete head-to-head in selling precious metals to the public for investment or collecting purposes.  Regal and its owners/employees,

---

[1] While it focuses on the websites, this Motion addresses all deceptive internet advertising, such as fake review YouTube videos. *See infra*. p. 10, n.8.

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

1  Gallagher and Felix, however, are playing dirty.  Specifically, they have been
2  saturating the internet with false and deceptive websites (the "Regal Sites") that
3  employ a variety of unscrupulous tactics to divert business to Regal.

4       The Regal Sites portray themselves as neutral, independent websites
5  operated by qualified professionals in the relevant fields of precious metals,
6  investing, and retirement planning, before proceeding to "independently review"
7  Regal and Plaintiff, among other competitors.  The Regal Sites, however, are
8  anything but neutral.  They are run or orchestrated by Defendants (and Felix) and
9  are completely fake.  The "reviews" of Plaintiff and Regal's other competitors are
10  biased and defamatory, while Regal is lauded and recommended.

11       The Regal Sites use fake names, stock photographs, and fabricated
12  credentials to give the sites false credibility and an aura of independence.  For
13  example, one Regal Site is "Reeves Jameson's The Gold IRA Reviewer":



"Hi, I'm Reeves Jameson, owner and creator of this website…"

"Whilst working on my own successful consultancy business over the years…"

"I started getting queries from my colleagues asking how I managed to maintain the value of my retirement portfolio…"

"I've done a lot of the hard work for you in the form of detailed reviews of all the best companies…"



25  But "Reeves Jameson" is actually stock photo
26  "Mature Businessman Wearing Striped Blue
27  Shirt With His Arms Folded" available on
28  123rf.com.  *See infra* pp. 10-11.  There simply

Mitchell
Silberberg &
Knupp LLP

6278195.1

2

1  is no Reeves Jameson; *a fortiori*, he has not had a "successful consultancy

2  business," and did not get "queries … asking how [he] managed to maintain the

3  value of [his] retirement portfolio" by investing with Regal.

4        Other Regal Sites (some of which have Facebook pages), stoop even lower –

5  hijacking pictures from obituaries to make the sites appear more authentic.



16        The Regal Sites repeatedly mislead the public as to the source of their

17  reviews and their independence – before panning the competition and

18  recommending Regal:



Mitchell
Silberberg &
Knupp LLP

6278195.1

28

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

1    But Defendants do not stop there; they go much further, posting or

2 facilitating the posting of defamatory content regarding Plaintiff in an effort to

3 capture its customers.  For example, the Gold IRA Protection "Regal Site" falsely

4 links Plaintiff to an entity with a **similar** name that was found guilty of fraud.

5

6

7

8

9

10    These assertions are completely and knowingly false.  There is absolutely no

11 connection between Plaintiff and American Bullion <u>Exchange</u> or its owner Ryan

12 Nassbridges – the actual defendants in the referenced case.  Indeed, Defendants

13 Regal and Gallagher admitted as much in their Motion to Dismiss.  Dkt. 10, p. 7.

14 Yet Plaintiff's multiple entreaties and demands to remove this clearly defamatory

15 content have been ignored.

16    These are just examples.  Defendants' campaign of deception is extensive

17 and ably demonstrated by the comprehensive evidence record submitted herewith.

18         * * *

19    Defendants' direct hand in

20 all this is clear.  Gallagher is the

21 owner/CEO of Regal and designed

22 Regal's affiliate moneymaking

23 "scheme."  Defendants make it

24 easy for anyone to become an

25 affiliate and, along with Felix,

26 control the sites and provide much

27 of the "independent" content that is

28 posted.

Mitchell
Silberberg &
Knupp LLP

6278195.1

4



Defendants, moreover, could have easily halted any illicit advertising long ago.  Defendants require each affiliate to execute an "Affiliate Program Agreement." Decl. of A. Wais ("Wais Decl."), Ex. 1.  This agreement purports to prohibit "slanderous promotion" and requires affiliates to adhere to all applicable law, including the "FTC Guidelines on affiliate disclosures." *Id*. p. 20 (§ 1).  The agreement gives Defendants *carte blanche* to "remove any Affiliate for any reason whatsoever" and warns that non-compliance will result in "the suspension and termination of the Affiliate's account and immediate forfeiture of generated commissions." *Id*. pp. 6-7.  Defendants' control over the program is thus total. Yet, Defendants have done nothing to stop the illegal marketing.  To the contrary, they are unrepentant.  Since initiating this action, Plaintiff has received a steady stream of anonymous electronic posts on its website, hurling homophobic slurs while bragging about Regal's success at Plaintiff's expense:

| Landing Page Details | |
|---|---|
| **Page Name** | Google Display |
| **URL** | ads.americanbullion.com/google-display |
| **Variant:** | n |
| **Submitted Form Data** | |
| **full_name** | ur all faggs |
| **phone_number** | 3104542847 |
| **email** | urcompanyisgoingdown@regalassets.com |

Defendants' dirty tricks campaign is irreparably harming Plaintiff's business.  Plaintiff is losing customers and the damage to its reputation could take years to repair, if it can be repaired at all.  Plaintiff has tried every measure to get Defendants to cease voluntarily.  But Defendants will not stop unless ordered to do so.  It is time and appropriate for the Court to preliminarily enjoin Defendants from engaging in these wrongful activities (as precisely specified in the accompanying Notice of Motion and Proposed Order) until such time as Plaintiff is able to prevail on the merits and thereby end their illicit conduct once and for all.

Plaintiff's Motion for a Preliminary Injunction should be granted.

Mitchell
Silberberg &
Knupp LLP

6278195.1

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

## II.    RELEVANT FACTUAL BACKGROUND

The critical facts – that (a) Plaintiff and Regal are direct competitors, (b) Defendants directly benefit from the illegal activities alleged, (c) Defendants direct the Regal Site campaign, and (d) Plaintiff has suffered and continues to suffer irreparable harm from the Regal Site campaign – are demonstrated below and in the accompanying evidence.

### A.    Plaintiff And Regal Are Direct Competitors.

Plaintiff and Regal are direct competitors – both assist customers wishing to invest a portion of their assets in precious metals.  Decl. of R. Warren ("Warren Decl.") ¶ 4; Second Decl. of J. Berkley ("Berkley Decl. II") Exs. 58-59.[2]

Plaintiff spends significant time and money promoting and advertising its services, including through the internet.  Warren Decl. ¶ 5; Decl. of B. Meert In Support of Motion for Default Judgment ("Meert Decl.") ¶ 5.[3]  Plaintiff promotes itself and generates a material portion of its business through online search engine results (*e.g.*, potential client looking for precious metal services types "American Bullion" or "Gold IRA" into Google or Bing).  Warren Decl. ¶ 6; Meert Decl. ¶ 5, Ex. 1; Berkley Decl. II Exs. 60-61.  Plaintiff also relies on word-of-mouth, including reviews and recommendations on the internet, to generate business. Warren Decl. ¶ 7; Meert Decl. ¶ 5.  Indeed, Plaintiff encourages satisfied customers to spread the word via online reviews.  Warren Decl. ¶ 7.  Accordingly, Plaintiff's online image, including as portrayed by online reviews and recommendations, is crucial to generating and keeping Plaintiff's customers. Warren Decl. ¶ 5; Meert Decl. ¶ 5.

---

[2] Mr. Berkley has filed two declarations in support of this Motion.  The first Berkley Declaration ("Berkley Decl. I") is identical to his declaration filed in support of Plaintiff's application for default judgment against Felix.  The Second Berkley Declaration ("Berkley Decl. II") contains additional information and attaches additional, consecutively numbered exhibits specific to this Motion.

[3] The Meert Declaration and exhibits thereto were previously filed with this Court and can be found at Docket Nos. 24, 24-1.  For ease of reference, they are also attached as Exhibit 3 to the Wais Declaration.

**B.     Gallagher Is An Owner Of And CEO For Regal.**

Gallagher is an owner of Regal and its CEO.  Berkley Decl. I Ex. 44 at 294; Berkley Decl. II Exs. 62-64.  Gallagher and his cohorts brag that Gallagher "had the vision" for "really blowing up" the affiliate program at issue, a "harebrained scheme" that he got "moving."  *Id.,* ¶¶ 7, 9-10 & Exs. 63, 65-66.

**C.     Defendants' Illegal Marketing Campaign.**

The Regal Sites are part of an illegal and unfair advertising campaign being waged by Defendants (and Felix) to divert business from Plaintiff to Regal. Affiliate marketing is not per se illegal.  Businesses may pay referral fees and websites may direct traffic to businesses that pay such fees.  But the relationship between the affiliate and the business it is promoting must be clearly and conspicuously disclosed and the advertising, like all advertising, must be truthful and not misleading.  16 C.F.R. § 255 (FTC Rev. Endorsement Guides); FTC Press Release, Mar. 12, 2013 ("[C]onsumer protection laws apply equally to marketers across all mediums, whether delivered on a desktop computer, a mobile device, or more traditional media such as television, radio, or print.").[4]

To this end, the FTC has made clear that endorsements, such as those by the Regal Sites, "must reflect the honest opinions, findings, beliefs, or experience of the endorser."[5]  16 C.F.R. § 255.1(a).  "When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (*i.e.*, the connection is not reasonably expected by the audience), such connection must be fully disclosed."  16 C.F.R.

---

[4] Wais Decl. Ex. 4 and publicly available at http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-publishes-final-guides-governing-endorsements-testimonials/091005revisedendorsementguides.pdf and Wais Decl. Ex. 5 and publicly available at http://www.ftc.gov/news-events/press-releases/2013/03/ftc-staff-revises-online-advertising-disclosure-guidelines, respectively.

[5] An endorsement is defined as "any advertising message … that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser." 16 C.F.R. § 255.0.

Mitchell
Silberberg &
Knupp LLP

6278195.1

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

§ 255.5.  Thus, when an endorser is being paid to recommend a company or product, then this material connection – the "payment or promise of compensation" for the endorsement – must be "**clearly and conspicuously** disclose[d]."  *Id.*; *see also* FTC ".com" Disclosures (setting forth requirements for clear and conspicuous disclosures)[6]; FTC Press Release, Mar. 12, 2013 (discussing new ".com" Disclosures) ("If a disclosure is needed to prevent an online ad claim from being deceptive or unfair, it must be clear and conspicuous.").  Moreover, "advertisers are subject to liability for false or unsubstantiated statements made through endorsements, or for failing to disclose material connections between themselves and their endorsers [and] [e]ndorsers also may be liable for statements made in the course of their endorsements."  16 C.F.R. § 255.1(d).

The Regal Sites do not just fail one of these tests – they fail them all.

**First**, the Regal Sites post purportedly "independent" reviews of Regal and Plaintiff (among other competitors).  *See, e.g.,* Berkley Decl. I Exs. 31-34, 37-39, 42 and 57 (website compilation).  The reviews criticize Plaintiff, and invariably conclude that Regal is the best provider and recommend its services.  *See id.*  This would be permissible if the sites/reviews were truly independent, but they are not.  The Regal Sites (1) use information provided to them directly by Defendants (and Felix) (*infra.*, § 13-14) and (2) are compensated by Regal for directing customers to Regal – connections which are not adequately disclosed, if they are disclosed at all.  *See, e.g.,* Berkley Decl. I Exs. 1-2, 8, 12, 31-34, 37-45, 51-52, 56, 57.

The Regal Site www.gold401krollovers.org is illustrative.  While it purports to provide information about investing in gold, it is really designed to promote Regal.  Berkley Decl. I Ex. 22; Ex. 57 at 1160-1176.  It has a large section dedicated to reviewing precious metal companies, which denigrates Plaintiff,

---

[6] Wais Decl. Ex. 6 and publicly available at http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REGAL AND GALLAGHER**

among others, while recommending Regal.  *Id.*  Of course, the site does not

disclose that its owner, Hernan Slodowicz, receives from Regal upwards of

$47,000 ***per month*** to recommend its services.  Berkley Decl. I, ¶¶ 26, 29-31 &

Exs. 26-27, 56 at 374-375; Berkley Decl. II, ¶¶ 11-12 & Ex. 67 at p.41, Exs. 68-69.

The Regal Site, www.goldiraguide.org, follows the same model to promote

Regal.  Berkley Decl. I Ex. 57 at 1702-1729.  While the site does contain a generic

disclaimer, the disclaimer is not truthful, clear or conspicuous (*e.g., id*. at 1704):

> We are a professional and independent Gold IRA review site
> that occasionally receives compensation from the companies
> we review on this site.  Note that this does not affect the
> quality of our reviews since we use the same criteria to review
> all companies.  We are 100% independently owned and have
> high standards and reputation to uphold.  We continuously
> monitor the companies….

The "disclosure" is not truthful because it does not state that the owner of

the website is paid to recommend Regal.  Instead, it falsely implies that it is

independent ("100% independently owned") and that *all* of the companies

reviewed, including Plaintiff (who is disparaged), have paid for their reviews.[7]  *See*

.com Disclosures p. 4 ("Advertising must be truthful and not misleading" or

"unfair.").  Moreover, the "disclosure" states that the website "use[s] the same

criteria to review all companies."  But that is also misleading – as Regal supplies

the content and reviews.

The "disclosure" is also not clear or conspicuous because it is too small,

hidden in a corner of the website and otherwise placed so that it is not prominent to

the consumer.  *See* ".com" Disclosures, pp. 7-21 (explaining requirements) & A-

21, Example 18 (disclosures not clear and conspicuous because they "contrast[]

poorly with the background of the page and they therefore are [] easy to miss").

An investor viewing this site (if he or she noticed the disclaimer at all)

would be misled into believing the reviews on the site are independent and

---

[7]  Other disclosures falsely state that the opinions expressed "are our own," when
they are supplied by Defendants and Felix.  *See, e.g.*, Berkley Decl. I Ex. 42 at 281
(www.goldirarollovers.com).

certainly would not understand that the operator of the website is being paid to recommend Regal and that this is the real reason for the glowing review of Regal and disparaging review of Plaintiff.[8]

**Second**, the Regal Sites use false identities and fabricated credentials to make the Sites appear sophisticated and trustworthy.  Regal's **marketing director**, Felix, does not just admit this part of the scam, he trumpets it:

> Your website MUST be trustworthy… Remember, what we are selling is expensive, so in order to make it work, we must establish TRUST.  … The good news is, like I mentioned before, if you would like me to create a website for you, I will personally do all of the writing and design to make your website trustworthy.  And I will do it all for FREE.  Berkley Decl. I, Ex. 12 at p. 100 (emphasis in original).

*See also* Berkley Decl. II Ex. 70, p. 61 ("regalaffiliates.net" website of top affiliate Crestani; sample quote: "No one Ever Suspects You're Marketing Anything… Using the special tactics which I go over … I will reveal the 'marketing trick' I use to get people to go-to my sites, and purchase the product, without ever knowing they had been marketed to.").  *See also id.*, ¶¶ 14-16 & Ex. 67 at p. 44, Exs. 71-72; Berkley Decl. I, ¶ 39 & Ex. 34 (Crestani website posing as site of "Tom Arvan").

Again, www.gold401krollovers.org is illustrative. This site purports to be operated by "Rob Lambin," who claims to have "built this site to inform others." "Mr. Lambin" explains: "[j]ust before the economy collapsed …, I was reaching retirement, and all of my money was stuck in my 401k and my bank's online savings account.  Fearful of losing it all, he "started looking at gold and silver" and "spent months researching and calling every single gold company in the U.S."

---

[8] The Regal Sites appear to use additional tactics such as "keyword stuffing" and "keying" to further misdirect Plaintiff's customers to the offending reviews. "Keyword stuffing" is the practice by which Plaintiff's trade name, American Bullion, is embedded within the Regal Site's internet source code to increase the probability that the Regal Site will appear in the Google or other search results when the name American Bullion is typed.  "Keying" is the practice by which "keywords" containing American Bullion are purchased from search engines so that when consumers search for those terms an advertisement for the offending Regal Site will appear on the search results screen. *See, e.g.,* Berkley Decl. II, Exs. 60-61; 78-80.

before choosing Regal.  Berkley Decl. I Ex. 22 at 174.  This is all false.  "Rob Lambin" is a stock photo and is actually Slodowicz, who is well compensated by Regal to recommend it.  *Compare* Exs. 22, 25 *with* Exs. 23-24, 26-27.

For another example, goldiraguide.com purports to have been founded by "Mark C. Turner," who "worked in the investment industry … for over 20 years," holds a degree in Finance and has "occupied various management positions at reputable banks and financial institutions."  Berkley Decl. Ex. 16.  But "Mr. Turner" is also a stock photo.  *Compare id.*, Ex. 16 *with* Ex. 17.  As are "Reeves Jameson" and "John Matthews."  *Compare id.*, Ex. 18 *with* Ex. 19; Berkley Decl. II, Ex. 73 *with* Ex. 74.

The examples are endless.  Indeed, the Regal Sites are not above taking photos from obituaries to make their sites appear more authentic.  *Compare* Berkley Decl. I, Exs. 28-29 *with* Ex. 30 (the face of americangoldira.com's "Gold IRA Research Team" is actually that of a Kalamazoo resident who passed away in May 2013); *see also id.*, Exs. 20-21, 34; Berkley Decl. II Ex. 81-82 (additional examples of fake identities and appropriated photographs).

**Third**, the Regal Sites go beyond merely criticizing Plaintiff and recommending Regal; some publish knowingly false and defamatory statements about Plaintiff to further dissuade potential customers from doing business with Plaintiff, in favor of Regal.  Specifically, certain Regal Sites assert that Plaintiff was a defendant in a lawsuit accusing it of running a precious metals "ponzi-like scheme" and that its owner was found guilty of fraud and later sued by the U.S. Commodities and Futures Trade Commission.  Berkley Decl. I Exs. 46-47.  **But all of that is false.**  The entity (American Bullion **Exchange**) and person (Ryan Nassbridges) accused/found guilty of fraud have no connection – past or present – to Plaintiff.  Warren Decl. ¶ 11.  The companies just share a similar name.  The Regal Sites, moreover, have continued to disseminate and publish these false and highly disparaging statements even after Plaintiff informed Gallagher of the true

facts and demanded that the statements be removed – and after Defendants admitted in their Motion to Dismiss that this entity and person have no connection to Plaintiff.  Berkley Decl. I Exs. 46-47; Meert Decl. ¶ 10-12, Ex. 2; Dkt. 10, p. 7.

**Fourth**, the Regal Sites, finally, usurp Plaintiff's trade and domain name to misdirect consumers looking for Plaintiff to Regal's own site.  For example, following the (slanted) review of Plaintiff, the Regal Sites usually list Plaintiff's web address – www.americanbullion.com.  But on certain sites, if the potential customer clicks on the link, they are actually re-directed to Regal's site.  *See* Berkley Decl. I ¶¶ 54-55, Exs. 48-49.

**D.    Defendants Oversee and Direct The Illegal Marketing Campaign.**

Defendants' complicity in this illegal marketing campaign is clear: they solicit the Regal Site operators; they provide and direct the content and style of the Regal Sites; they compensate the operators for each lead/sale generated; and they refuse to terminate the Sites – even where the existence of false and defamatory advertising is conceded.

**1.    Defendants do not police or deter the illicit advertising.**

Defendants' involvement and culpability is evidenced by the fact of the continued operation of the Regal Sites itself.  Defendants control the affiliates and the content of their websites by requiring every operator to execute a Regal Affiliate Agreement.  Wais Decl. Ex. 1.  The Regal Affiliate Agreement requires all affiliates to adhere to detailed, but illusory, "promotional rules and guidelines." *Id.*, p. 6.  It also gives Defendants the authority to "remove any Affiliate for any reason whatsoever," including violating its rules and regulations.  *Id.*, p. 7.  Thus, a "first offense" will result in a warning, after which the affiliate will have 48 hours in which to take corrective action.  Failure to take corrective action or a "second offense" will result in the affiliate's "commission rate [being] set to 0% and past commission payments may be reclaimed."  A "third offense" means that an affiliate "will be removed from the program" and "[a]ll affiliate commissions will

be reclaimed." *Id.*, pp. 6-7.

The rules and guidelines, if followed, would require affiliates to adhere to the law and promote Regal through truthful and fair means.  The Regal Affiliate Agreement purports to prohibit "slanderous promotion" and states that affiliates "**must** comply with FTC Guidelines on affiliate disclosures," which are republished in their entirety as part of the Regal Affiliate Agreement.  *Id.* pp. 20 (§ 1) & 21 (§ 7) (bolding original; underlying added).  Specifically:

> Affiliates promoting Regal Assets through outside sites or offers <u>must disclose that they are paid by Regal Assets for referrals and this must be prominent</u> on your site or offer.  <u>Placing one disclosure on your home page</u> or a link to one in your footer <u>is not enough</u>.  Disclosure must be on every page of your site or offer that has a review, recommendation, comment or article that appears to promote Regal Assets goods and services.  The disclosure must be conspicuous and easy to see on your site or offer (in other words, <u>it should stand out</u>).
>
> \*        \*        \*
>
> **Affiliates must read and comply with the FTC Disclosure Guidelines or your account may be suspended immediately**.

*Id*. p. 21 (§ 7) (emphasis added).  But this is all an illusion – all part of the game.  Defendants have no interest in stopping the illegal advertising they are facilitating and directing, and make no effort to do so.  Plaintiff demanded that these sites be removed or corrected in February – 4 months ago.  *Id*., Ex. 2 (cease-and-desist letter).  The fact that the Regal Sites continue to operate unabated speaks volumes.

### 2.        Defendants provide illicit content to the Regal Sites.

Defendants not only permit the Regal Sites to operate but they provide much of the "independent" content that is posted.

The Regal Affiliate Agreement states that Regal will "make available to the Affiliate through the Regal Website lead capture forms, swipe files, text ads and banner advertisements to be placed on the Affiliate's site or offers," as well as "lead capture forms, dedicated links, banners, [] other advertising materials," and "marketing materials."  Wais Decl. Ex. 1, p. 8 (§ 7a-d).  To this end, the Regal

Sites display Regal's logo and other promotional images, as well as much of the information about investing in precious metals that the Regal Sites claim to have independently "researched." *See, e.g.,* Berkley Decl. I Ex. 50 (content displayed from regalassets.com); *see also generally id.*, Ex. 57; *compare id.*, Ex. 16 *with* Berkley Decl. II Ex. 75 (identical lists of billionaire gold investors).

Regal's marketing director, Felix, in turn, "handle[s]" Regal's affiliate marketing program (Berkley Decl. I Exs. 1-2, 4; *see also id.*, Exs. 3, 5), including by providing web content and other support to various Regal Sites. *Id.* Ex. 15 (Felix will provide "attention grabbing creatives" and "high converting, lead capture forms that you can just plug into your site."). *See also id.*, Exs. 10, 12 at pp. 100, 123; *id.,* ¶ 56, Ex. 50.[9] (In moving to set aside his default, Felix did not contest Plaintiff's assertion that Felix is Regal's marketing director. Dkt. 10, p. 7.)

In fact, Regal's affiliate recruitment materials reveal that Defendants go even further by providing affiliates with their "own FREE website already built for you so you can get started straight away" or "content to make building your own website easy if you choose to build one," including "text and images you can incorporate," "captivating videos that highlight the benefits of owning gold, inspiring purchase" and a "dedicated Regal Assets representative to assist you." Berkley Decl., Ex. 14 (sample site available at regalassets.com). *See also id.* Ex. 12 at p. 100 (Felix: "The good news is, like I mentioned before, if you would like me to create a website for you, I will personally do all of the writing and design to make your website trustworthy. And I will do it all for FREE."). That Defendants are designing or providing the content for the Regal Sites is clear from the fact that supposedly independent sites are permeated with substantively similar content. *Compare e.g.,* Berkley Decl. I, Ex. 22 *with* 34. *See also* Berkley Decl. II Ex. 84.

---

[9] Felix also "run[s] traffic through [his] own…affiliate sites" – i.e., his own Regal Sites – to generate sales for Regal, for which he earns monthly commissions. Berkley Decl. I Exs. 1-2; 56 (Felix's earnings per month from fake Regal Sites); Exs. 43-45, 51-52 (examples of his sites).

**3.    Defendants compensate the affiliates for the leads generated by their false and deceptive marketing.**

Defendants compensate the "affiliates" for the leads and sales they generate for Regal.  Berkley Decl. I Ex. 14.  Indeed, in Defendants' words, "Regal Assets commission structure is tailored for you to earn maximum revenue…":

Heres what you'll earn:

- 3% commission of the total amount invested.
- 2% commission of the total amount invested of any of your sub-affiliates. These are individuals you have referred to the program.
- $30 for every person who requests a FREE investment kit from your site.
- $30 For every person who uses your dedicated phone number and spends 10+ minutes talking with a Regal Assets **representative**.

Berkley Decl. I Ex. 14 at p. 138.  And by the affiliates' own admissions, business is booming; Defendants have paid hundreds of thousands in commissions to its top affiliates in the months following their receipt of Plaintiff's cease-and-desist letter (and millions since last year).  Berkley Decl. I Exs. 1-2, 12, 14, 56; Berkley Dec. II Exs. 67, 69-70.  Indeed, Regal continues to pay and the affiliates, including Felix, continue to crow about their success notwithstanding the pendency of this action.  *See id.* Ex. 67 (trumpeting Felix's June commissions and $56.1 million in sales).

**4.    Regal is benefitting immensely from the affiliate program.**

Regal's business has benefitted immensely from the affiliate program.  It is bringing in millions of dollars in sales through the Regal Sites.  *See* Berkley Decl. I Exs. 1-2, 12, 56; Berkley Decl. II Exs. 63, 66-67, 69-70, 83.  Regal brags that it is one of the "fastest growing private companies."  Berkley Decl. II Ex. 76.  Indeed, in 2013, Regal ranked as the 287th fastest growing private company in the United States, having grown its revenues by 1,514% since 2009.  *Id.*, Ex. 77.  While Gallagher spins this growth as "nothing but a sign of how hard everyone has been working …," (*id.*, Ex. 64) the real reason for the growth is demonstrated above and comes at the expense of its competitors.  Warren Decl. ¶¶ 9-15; Meert Decl. Ex. 1.

Mitchell
Silberberg &
Knupp LLP

6278195.1

15

### E.   Deceptive Campaign Continues, Irreparably Damaging Plaintiff.

The Regal Sites are illegal, but highly effective in deceiving and scaring away Plaintiff's customers.  Plaintiff has lost market share and significant business, and the Sites are causing **continuing** irreparable harm to its reputation and goodwill.  Warren Decl. ¶¶ 12-15; Meert Decl. ¶¶ 13-17.  Since Defendants began flooding the internet with Regal Sites, American Bullion has experienced a drastic reduction in traffic driven by customer initiated search queries.  Meert Decl. ¶¶ 5-15, Ex. 1.  Potential customers, moreover, have expressly cited content from the Regal Sites as their reason for not investing through American Bullion.  Warren Decl. ¶¶ 12(a)-(x); Meert Decl. ¶ 14.  It is impossible to know how many existing customers and potential customers have not even bothered to contact or re-contact Plaintiff after reading these sham reviews or being mis-directed to Regal's website.  The Regal Sites remain in place and Defendants continue to supervise and profit from them – and have refused all entreaties (from Plaintiff and other competitors) to voluntarily cease this misconduct.  Berkley Decl. I, Ex. 57; Wais Decl. Ex. 2.

* * *

The preceding discussion, of necessity, barely scratches the surface of Defendants' dirty tricks campaign and its consequences.  By contrast, the two Berkley Declarations, the Meert Declaration, the Warren Declaration and the Wais Declaration, as well as the exhibits thereto, detail the breadth of Defendants' deception and its real-world impact on Plaintiff in painstaking detail.

## III.   THE COURT SHOULD ENTER A PRELIMINARY INJUNCTION AGAINST DEFENDANTS

### A.   Legal Standard

Plaintiff "must establish that [it] is [1] likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239,

1247 (9th Cir. 2013) (internal quote marks and citation omitted).

"Preliminary relief may [also] be warranted where a party (1) shows a combination of probable success on the merits and the possibility of irreparable harm, or (2) raises serious questions and the balance of hardships tips in favor of an injunction."  *Duck Dive v. Heydari*, 2014 U.S. Dist. LEXIS 42313, at *3 (C.D. Cal. Mar. 27, 2014) (Pregerson, Dean D., J) (*citing Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)).  "Under both formulations, the party must demonstrate a 'fair chance of success on the merits' and a 'significant threat of irreparable injury.'"  *Id.* at **3-4.

### B.   All Factors Warrant Entry of A Preliminary Injunction

Plaintiff is entitled to relief under either formulation of the test – as all factors support entry of a preliminary injunction.

### 1.   American Bullion Is Likely To Succeed On The Merits

Plaintiff is **likely** to succeed on all of its claims for relief.  The elements for proving each claim are straightforward and the facts proven above make it abundantly clear that each element is satisfied:

### a.   False Advertising

A plaintiff establishes a Lanham Act false advertising claim (1st COA) by demonstrating "that the defendant made a false statement either about its own product or service or the plaintiff's."  *iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, 2011 U.S. Dist. LEXIS 144425, at *43 (N.D. Cal. 2011) ("iYogi"); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1393 (2014) (a "classic" false advertising claim is when a competitor "injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch") (brackets omitted); Dkt. 34 (order denying Motion to Dismiss).  A false statement is one that is (a) literally false or (b) literally true but is likely to mislead or confuse consumers.  *iYogi*, 2011 U.S. Dist. LEXIS 144425, at *43.  Moreover, where, as here, the false advertising at issue is

comparative advertising, injury is presumed. *Johnson & Johnson-Merck Consumer Pharm. Co. v. P&G*, 285 F. Supp. 2d 389, 393 (S.D.N.Y. 2003).

Plaintiff establishes a Cal. Bus. & Prof. Code § 17500 false advertising claim (2nd COA) by proving that "the defendant, with the intent to perform professional or other services, made a statement concerning those services that is untrue or misleading." *iYogi*, 2011 U.S. Dist. LEXIS 144425, at *42. "A statement is untrue or misleading if members of the public are likely to be deceived." *Id.*; *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).

Defendants' illegal affiliate website program violates both statutes.[10]

Judge Spero's decision in *iYogi*, which involved similarly deceptive reviews and websites, is directly on point. In that case, the plaintiff alleged that the defendant, one of its competitors, posted false and misleading information about the plaintiff on a website. The website in question, like those here, led consumers to believe that it was neutral when it was actually operated by the defendant. The defendant also posted false and misleading reviews on other websites without disclosing the connection between the reviews/reviewers and defendant. 2011 U.S. Dist. LEXIS 144425 at *3-5.

The iYogi plaintiff alleged (*id.* at **43-44) that:

> [D]efendants' posting of shill reviews and false and misleading information on consumer websites were literally false and if not literally false were likely to confuse customers[,]…these reviews were made in the course of advertising Defendants' services and were likely to affect the decisions of members of SRS's and iYogi's target audience – consumers of remote computer technical services.

---

[10] Defendants' violation of the Lanham Act and California's False Advertising Law is also independently actionable under the "unlawful" prong of California's unfair competition law (3rd COA). *See* Dkt. 34 (denying Motion to Dismiss on this basis). Indeed, that statute was specifically promulgated to prevent new and ingenious frauds and competitive harm, and to permit streamlined relief. *See, e.g.*, *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999) (noting statute's purposefully expansive nomenclature).

1    The Court entered judgment for the plaintiff, holding that the allegations

2    were sufficient to state claims for false advertising under the Lanham Act and

3    Section 17500.  *Id.* at *44.  Here too, Defendants have disseminated false and

4    disparaging reviews about Plaintiff, while lauding Regal, through the guise of fake

5    review websites and other online content, thereby confusing consumers and

6    diverting them from Plaintiff to Defendants' competing business.

7            Defendants' misconduct is palpable and ably demonstrated herein – making

8    it (far) more than likely that Plaintiff will prevail on its false advertising claims.

9    *See supra*, § I-II, pp.1-16; *see generally* Berkley Decls. I & II, Warren Decl., Meert

10   Decl., Wais Decl.  *See iYogi*, 2011 U.S. Dist. LEXIS 144425, at **42-44;

11   *eAdGear*, 2012 U.S. Dist. LEXIS 86364, at **31-32 (N.D. Cal. June 21, 2012)

12   (statements about, *inter alia*, "impending negative BBB reviews" of Plaintiff that

13   were "literally false or . . . likely to confuse customers," and use of a similar

14   domain name to divert internet users from Plaintiff to Defendants' website,

15   supported claim for false advertising); *Johnson.*, 285 F. Supp. 2d at 393 (when

16   defendant "has deliberately walked close to the line" "once the line is crossed, . . .

17   [defendant] must bear the consequences of its actions").

**b.     Unfair Business Practices**

19           Plaintiff is also likely to prevail on its claim that Defendants' conduct is

20   "unfair" within the meaning of Cal. Bus. & Prof. Code § 17200 – California's

21   Unfair Competition Law ("UCL") (4th COA).  (Plaintiff's "unlawful" conduct

22   claim under the UCL is addressed *supra* at footnote 10.)

23           California's UCL makes it illegal for businesses to perpetrate "unfair"

24   business practices.  *See, e.g., Cel-Tech*, 20 Cal. 4th at 180 (the "unfair" standard,

25   the second prong of section 17200, provides an independent basis for relief).  An

26   "unfair" business practice is any practice that "significantly threatens or harms

27   competition."  *Id.* at 187.

28

1   Defendants' fraudulent review sites are exactly the type of "chicanery" that

2   the UCL's unfair conduct prong was promulgated to eliminate. *Id.* at 181.  Indeed,

3   the California Supreme Court made this exact point in defining the statute's reach:

4       [I]it would be impossible to draft in advance detailed plans
        and specifications of all acts and conduct to be prohibited …,
5       since unfair or fraudulent business practices may run the
        gamut of human ingenuity and chicanery"

6   *Id.* at 181.  *See, e.g.*, iYogi, 2011 U.S. Dist. LEXIS 144425, at *42.  If the facts

7   here do not meet the definition of unfair business practices, nothing would.  *See*

8   *supra*, § I-II, pp.1-16.

9   Plaintiff is likely to prevail on its claims pursuant to the UCL.

10                    **c.   Other Claims**

11  Plaintiff is also likely to prevail on its other claims.[11]

12  Trade libel (5th COA) is: (1) the publication of a statement; (2) that tends to

13  disparage the plaintiff's product or property; (3) that is provably false; (4) that was

14  published with knowledge of its falsity or with reckless disregard for its falsity;

15  and (5) that causes specific pecuniary loss.  *See Sci. of Skincare, LLC v.*

16  *Phytoceuticals, Inc.*, 2009 U.S. Dist. LEXIS 58241, at *14 (C.D. Cal. July 8,

17  2009); Dkt. 34 (order denying Motion to Dismiss).

18  Defamation (6th COA), in turn, is "(a) a publication that is (b) false, (c)

19  defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or

20  that causes special damage."  *Skincare*, 2009 U.S. Dist. LEXIS 58241 at **14-15

21  (internal citation omitted); Dkt. 34 (order denying Motion to Dismiss).

22  Here, Defendants published or caused to be published a demonstrably false

23  statement that defames and disparages Plaintiff – namely that Plaintiff was a

24  defendant in a lawsuit accusing it of running a precious metals "ponzi-like

25  scheme" and that its owner was found guilty of fraud, when in reality the statement

26

27  [11] Plaintiff, of course, need not prevail on all of its claims to justify a preliminary
    injunction.  Plaintiff meets the standard (for the first factor) if it is likely "to prevail
    on any ***one*** of the causes of action."  *Imperial v. Castruita*, 418 F. Supp. 2d 1174,
28  1181 (C.D. Cal. 2006) (emphasis added).

Mitchell
Silberberg &
Knupp LLP

6278195.1

20

concerns a completely separate and unrelated company.  *See* Berkley Decl. I Exs. 46-47.  The statement was made "with knowledge that the statement was false or with reckless disregard for its falsity" in that Plaintiff previously directly advised Defendants of the falsity of the statement – which Defendants concede (Dkt. 10 at 7) – but the Regal Sites, which Defendants control, continue to disseminate it to the public.  Meert Decl. ¶ 10-12, Ex. 2.  Finally, the statement has caused Plaintiff to lose specific customers and sales, and suffer reputational damage.  *See* Warren Decl. ¶ 12; Meert Decl. ¶¶ 13-17, Ex. 1.

Plaintiff is also likely to prevail on its claim for intentional interference with prospective economic advantage (7th COA).  Plaintiff has proven (1) an economic relationship between Plaintiff and some third party (potential customers), with the probability of future economic benefit to Plaintiff (potential sales); (2) Defendants' knowledge of the relationship; (3) intentional acts by Defendants designed to disrupt that relationship (the fake review sites); (4) actual disruption (lost sales); and (5) resulting economic harm to Plaintiff (lost profits).  *See generally* Warren Decl., Meert Decl.; Berkley Decl. I & II; *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003); *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th at 434, 448 (1993).

Plaintiff is not merely likely, but highly likely, to prevail on its claims, thus entitling it to a preliminary injunction.  Plaintiff has satisfied the first factor.

**C.**   **American Bullion Has Suffered And Will Continue To Suffer Irreparable Harm Without Preliminary Relief.**

**1.**   **Plaintiff Is Entitled to Presumption of Irreparable Harm**

Plaintiff, having established a likelihood of success, is entitled to a presumption of irreparable harm.  *Nordstrom, Inc. v. Nomorerack Retail Gr., Inc.*, 2013 U.S. Dist. LEXIS 41810, *40 (W.D. Wash. Mar. 25, 2013) ("[P]resumption of irreparable harm in the trademark context appears to survive, because where a plaintiff is likely to succeed on the merits of a trademark infringement claim, he necessarily is likely to suffer irreparable harm"); *c.f. Otter Prods., LLC v. Berrios*,

2013 U.S. Dist. LEXIS 147139, *28-29 (C.D. Cal. Oct. 10, 2013) ("[C]ourts have continued to apply the irreparable harm presumption in trademark infringement cases for permanent injunctions, and this Court follows suit.").[12]

### 2. Plaintiff Has Demonstrated Irreparable Harm

Plaintiff's Motion does not turn on the presumption in any event.

The irreparable harm to Plaintiff is palpable – the Regal Sites are misdirecting, confusing, and misleading Plaintiff's customers and potential customers, depriving Plaintiff of current and future sales, and casting a pall over Plaintiff's reputation that will take years to fix, if it can be fixed at all.  Plaintiff's injury expands exponentially with each day the Regal Sites are permitted to confuse and confound the purchasing public – a finding well-recognized in the case law.  *See, e.g.*, *Robinson v. Delicious Vinyl Records, Inc.*, 2013 U.S. Dist. LEXIS 109279, at *19 (C.D. Cal. Aug. 1, 2013) ("Courts have repeatedly found that losing control of one's reputation and good will in the marketplace supports the issuance of an injunction.").

Plaintiff has lost new potential customers and sales because of the Sites. Warren Decl. ¶¶ 12(a)-(x); Meert Decl. 14.  *See Duck Dive*, 2014 U.S. Dist. LEXIS 42313, at * 5 (*citing Stuhlbarg Int'l Sales Co. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007)).

Plaintiff has lost market share as a result.  Warren Decl. ¶¶ 12-14; Meert Decl. ¶ 15; *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009) *aff'd*, 616 F.3d 1357 (Fed. Cir. 2010); *Sanderson Farms, Inc. v Tyson Foods, Inc.*, 547 F. Supp. 2d 491, 498, 505 (D. Md. 2008)

---

[12] The Ninth Circuit's decision in *Flexible Lifeline* is not to the contrary.  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).  While t eliminated the presumption in copyright cases, it did not "address the viability of the presumption in the [Lanham Act] context."  *Duck Dive*, 2014 U.S. Dist. LEXIS 42313, at *4.

(granting preliminary injunction where defendant's false advertising resulted in increased sales to plaintiff's detriment).

Plaintiff's reputation and goodwill, finally, is under constant attack.  Warren Decl. ¶¶ 11-15 ; Meert Decl. ¶ 16.  *See, e.g.*, *Kalologie Franchising LLC v. Kalologie Skincare Med. Group of Cal.*, 2014 U.S. Dist. LEXIS 32223, at **13-14 (C.D. Cal. Mar. 11, 2014) (trademark case) ("Loss of control over business reputation "can constitute irreparable harm justifying injunctive relief.") (*citing Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011)).

Any of these harms is sufficient; all together they are overwhelming.

### D.   Balance of Equities Weighs Decidedly In Plaintiff's Favor.

The balance of equities is clear – and tips decidedly in Plaintiff's favor.

"A court balancing the equities will look to the possible harm that could befall the various parties." *Maxim Integrated Prods. v. Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal. 2009) (trademark and false advertising case).  This balance tips in a plaintiff's favor when "Plaintiff has submitted evidence that it has already lost business as a direct result of Defendants' conduct" and "[i]n contrast, Defendants would not suffer hardship if the Court entered a narrowly tailored injunction prohibiting them from employing unlawful means to compete against Plaintiff." *Western Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 U.S. Dist. LEXIS 52023, at *19 (N.D. Cal. June 8, 2009); *cf. Certainteed Corp. v. Brokers*, 2010 U.S. Dist. LEXIS 64410, at **41-42 (W.D. Wash. June 28, 2010) (balance of equities favors permanent injunction "where nothing prevents [the enjoined party] from advertising his business without false statements"); *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (trademark context, "[w]hen considering the balance of equities, courts will not shy away from issuing…relief" to prevent illegal efforts to "trade upon the efforts and good will" of the trademark owner) (internal citations omitted).

This is the exact situation here.  Plaintiff has uncovered a massive scheme of false and misleading advertising that has directly caused it to lose business and is continuing to cause it to lose business, as well as damaging its reputation and goodwill.  Warren Decl. ¶¶ 9-15; Meert Decl. ¶¶ 6-17, Ex. 1.  Defendants and their Regal Sites are brazen and unabashed in their methods; conjuring new sites, new fake identities, and new "reviews" with abandon.  Berkley Decl. I, Ex. 57.  Plaintiff is diverting massive resources to combat Defendants' actions, but is still losing customers on a daily basis, for the old Mark Twain quote is true – "A lie can travel halfway around the world while the truth is still putting on its shoes."

Defendants, in contrast, cannot demonstrate any hardship, as the proposed injunction merely prohibits them from "employing unlawful means to compete against Plaintiff" – namely, soliciting, supporting, and compensating the operators of fake review websites which disparage Defendants' competitors and steal their customers. *Western Directories, Inc.*, 2009 U.S. Dist. LEXIS 52023, at *19.  Precluding such illegal conduct cannot constitute any hardship, let alone a material one. *See id.*; *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113 (S.D. Cal. 2012) ("There is no harm to [defendant] since an injunction would merely require [defendant] to comply with the law.").  Indeed, in this case, and with some irony, the injunction would merely require Defendants to enforce the existing rules and guidelines of their own Regal Affiliate Agreement.

The proposed injunction, finally, is narrowly tailored; it would not limit Defendants (or anyone else's) ability to lawfully direct internet traffic to Regal's sites and to compensate them for such efforts. *See, e.g., Certainteed Corp.*, 2010 U.S. Dist. LEXIS 64410, at **41-42.

### E.   Enjoining The Regal Sites Serves The Public Interest.

The proposed injunction, lastly, would serve the public interest.

The public's interest in truth in advertising, full disclosure, and fair competition is beyond credible dispute.  The Lanham Act, California's False

1  Advertising Law, FTC regulations, the UCL, trade libel, defamation law, and the

2  law of intentional interference, among many other statutes and torts, are all

3  designed to ensure and enhance free **and fair** competition, to protect the public and

4  competitors from unscrupulous business practices, and to prevent false advertising.

5  Plaintiff, its would-be customers, and society at large have a strong interest in

6  being able to trust online content and to root out fake websites and other internet

7  deceptions.  *iYogi*, 2011 U.S. Dist. LEXIS 144425, at \*54 ("[I]njunctive relief is

8  provided … to protect the general public from fraud and deceit."); *cf. Moroccanoil,*

9  *Inc.*, 590 F. Supp. 2d at 1282 ("In trademark cases, this factor is often addressed in

10  terms of the public's right not to be deceived or confused.").

11      Society, in contrast, has no interest in permitting Defendants to go on

12  creating, operating, and controlling fake websites that use false identities and

13  credentials, defamatory content, and false designations of origin and independence,

14  to dupe customers into lining their own pockets.

15      The societal interest is clear – and supports a preliminary injunction here.

16                                        * * *

17      For the same reasons, Plaintiff has also shown a "fair chance of success on

18  the merits" and a "significant threat of irreparable injury" – thus satisfying the

19  alternative standard for preliminary injunctive relief.  *Duck Dive*, 2014 U.S. Dist.

20  LEXIS 42313, at \*3-4.

21  **IV.   CONCLUSION**

22      Plaintiff's Motion for a Preliminary Injunction against Defendants Regal and

23  Gallagher should be granted.

24  Dated: July 21, 2014                MITCHELL SILBERBERG & KNUPP LLP

25

26  By:_____/s/ Aaron M. Wais_____
          Aaron M. Wais (SBN 250671)
27          Attorneys for Plaintiff
          American Bullion, Inc.

28