1

2

3                                                          O

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   AMERICAN BULLION, INC.,        )  Case No. CV 14-01873 DDP (ASx)
                                    )
12                  Plaintiff,      )
                                    )
13        v.                        )
                                    )  **ORDER RE: DEFENDANTS' MOTIONS FOR**
14   REGAL ASSETS, LLC; TYLER       )  **RECONSIDERATION AND MODIFICATION**
     GALLAGHER, AN INDIVIDUAL;      )  **OF INJUNCTION**
15   KELLY FELIX, AN INDIVIDUAL,    )
                                    )
16                  Defendants.     )
     _____ )
17

18        Presently before the court are Defendants Regal Assets, LLC

19   and Tyler Gallagher's (collectively, "Defendants" or "Regal")

20   separate motions for reconsideration of this court's November 17

21   order granting a preliminary injunction and/or modification of the

22   injunction.  Having considered the submissions of the parties,

23   heard oral argument, and reviewed the evidence, the court grants

24   the motion for reconsideration, concludes that a modified

25   preliminary injunction is warranted, and adopts the following

26   order.

27   ///

28   ///

**I.    Background**

As described in detail in this court's order granting a preliminary injunction, Plaintiff American Bullion, Inc. and Defendants are competitors in the field of adding gold and other precious metals to individual retirement accounts.  Both parties promote themselves on the internet.  Plaintiff contends that Defendants operate an affiliate marketing program, and that Defendants control the paid affiliates.  Plaintiffs further allege that affiliate websites disseminate false statements about Plaintiff, praise Defendants, disparage Plaintiff's services, misdirect Plaintiff's potential customers to Defendants' site, and fail to disclose the financial relationship between Defendants and the affiliates.  Plaintiff's Complaint alleges causes of action for false and misleading advertising under the Lanham Act, 15 U.S.C. 1125(a), and state law, as well as state law causes of action for unfair competition, unfair business practices, trade libel, defamation, and intentional interference with prospective economic advantage.

Plaintiff moved for a preliminary injunction.  The bulk of the parties' briefing, and much of oral argument, revolved around Regal's degree of control over its affiliates and concomitant liability for their actions.  On November 17, 2014, this court concluded that Regal's affiliates were likely its agents, that the affiliates' relevant acts fell within the scope of their agency, and that Plaintiffs had made the requisite showing for a preliminary injunction under <u>Winter v. Natural Res. Defense Counsel</u>, 555 U.S. 7, 20 (2008).  Defendants now ask that this court

vacate the order and injunction on reconsideration or, in the

alternative, modify the terms of the injunction.

**II.  Discussion**

     A.   Reconsideration

     Under Federal Rule of Civil Procedure 60(b), a party may seek

reconsideration of a final judgment or court order for any reason

that justifies relief.  Central District of California Local Rules

7-18 further explains that such reasons include:

> "(a) a material difference in fact or law from that
> presented to the Court . . . that . . . could not have been
> known to the party moving for reconsideration at the time
> of such decision, or (b) the emergence of new material
> facts or a change of law occurring after the time of such
> decision, or (c) a manifest showing of a failure to
> consider material facts presented to the Court before such
> decision."

C.D. Cal. L.R. 7-18.  A motion for reconsideration may not,

however, "in any manner repeat any oral or written argument made in

support of or in opposition to the original motion."  Id.

     Defendants advance several grounds for reconsideration, some

of which were clearly raised in connection with the original

motion.  Among Defendants' arguments is a contention that the court

relied upon evidence that it had excluded.  Defendants refer

primarily to the Third Declaration of James Berkley in support of

Plaintiff's motion.  The "Berkley III" declaration sets forth

several examples of likely wrongful conduct on Regal affiliate

websites.  Though submitted with Plaintiff's Reply, Plaintiffs

characterize the Berkley III evidence as rebuttal evidence,

submitted to rebut Defendants' contentions that wrongful acts were

limited and had ceased.  At argument, the court agreed with

Defendants that new evidence may generally not be submitted on

Reply.  The court did not, however, make any explicit rulings

1   regarding the Berkeley III declaration, to which Defendants did not
2   object.   Though Defendants' contention that they were "blocked"
3   from objecting by the court's general statement is not persuasive,
4   under the circumstances, the court finds reconsideration warranted
5   for purposes of providing Defendants a full opportunity to address
6   the Berkley evidence.

7        The court also finds reconsideration warranted in light of the
8   underlying basis for the court's order.   In summary, the court
9   concluded that Regal's affiliates are likely its agents.   While
10  Plaintiff's complaint does allege that Regal exercises control of
11  its affiliates, the agency theory was not briefed thoroughly by the
12  parties.   The issue was, however, discussed at length during oral
13  argument.   Regal's contention that it was denied the opportunity to
14  be heard on the agency issue, and therefore denied due process, is
15  therefore not well taken.[1]   Nevertheless, in the interest of a full
16  and fair discussion of the issues, the court finds reconsideration
17  appropriate.

18       B.   False Advertising Injunctions

19       Defendants argue that the _Winter_ preliminary injunction
20  standard is not appropriate in cases involving speech issues, and
21  that to enjoin Regal's commercial speech would be to impose an
22  unconstitutional prior restraint upon it.

23

24       [1] Regal makes a similar, and similarly unconvincing, due
25  process argument with respect to the injunction ultimately issued
    by the court.   That injunction, as all parties seem to acknowledge,
26  was significantly different from that proposed by Plaintiff and
    opposed by Defendants, in that it was far narrower and _less_
27  restrictive.   Defendants' apparent contention that due process
    could only have been satisfied if the court had entered (or
28  rejected outright) the harsher injunction opposed by Defendants is
    somewhat puzzling.

It is not entirely clear whether Defendants contend that commercial speech can <u>never</u> be preliminarily enjoined. Defendants cite repeatedly to <u>Hammes Co. Healthcare , LLC v. Tri-City Healthcare Dist.</u>, 2011 WL 6182423 at *16 (S.D. Cal. 2011) for the proposition that the court cannot enjoin speech unless it first makes express findings that the enjoined conduct presents a clear and present danger to some competing right. <u>Hammes</u>, however, discussed prior restraints of speech and the First Amended in the context of a gag order, and had nothing to do with false advertising.

Defendants also cite to cases where district courts declined to preliminarily enjoin commercial speech. In <u>New.net v. Lavasoft</u>, 356 F.Supp.2d 1071, 1084 (C.D. Cal. 2003), for example, the court found that determinations of actual truth or falsity of certain statements were not yet at issue, and therefore suggested that the court could not enjoin that speech. The court also held, however, that even if the subject of actual falsity were before the court, the court would not issue an injunction because the commercial speech at issue was not false. <u>Id.</u>; <u>See also</u> <u>Isuzu Motors Ltd. V. Consumers Union of U.S., Inc.</u>, 12 F.Supp.2d 1035, 1049 (C.D. Cal. 1998) ("[A]n injunction would necessarily precede an adequate determination that a particular statement by defendant was false . . . . [O]nce a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin the defendant from repeating that statement."

These cases do not stand, however, for the proposition that courts cannot enjoin any commercial speech. It is well established that "[f]alse or misleading commercial speech is not protected"

5

under the First Amendment.  Hoffman v. Capital Cities/ABC, Inc.,
255 F.3d 1180, 1184 (9th Cir. 2001).  Indeed, courts regularly
issue preliminary injunctions in false advertising cases, even in
the face of First Amendment challenges.  See, e.g. Novartis
Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
Pharmaceuticals Co., 290 F.3d 578 (3rd Cir. 2002); Vidal Sassoon,
Inc. v. Bristol-Myers Co., 661 F.2d 272 (2nd Cir. 1981); Osmose,
Inc. v. Viance, LLC, 612 F.3d 1298 (11th Cir. 2010); J.K. Harris &
Company, LLC v. Kassel, 253 F.Supp.2d 1127-29, 1124 (N.D. Cal.
2003).

　　　To the extent Defendants intend to argue that there is not yet
any indication in this case that any false statements have been
made by anyone, that position flies in the face of the evidence
before the court, and conflicts with Defendants' own prior
position.  As discussed in this court's order, there appeared to be
little dispute that false statements were disseminated by some
Regal affiliates.  Regal appeared, and appears still, to
acknowledge that some Regal affiliate sites displayed images
appropriated from obituaries as if to suggest that the deceased
individual pictured endorsed Regal, contained completely fabricated
personas and backgrounds of nonexistent endorsers, and explicitly
and falsely stated that Plaintiff was found guilty in a fraud suit
and was later sued by the U.S. Commodities Futures Trading
Commission.  There is little question, even at the preliminary
injunction stage, that these statements are false, and therefore
enjoy no First Amendment protection.

　　　That said, Defendants raise a colorable argument that the
balance of hardships, public interest factors, and the threat of

1   irreparable harm to Plaintiff do not justify certain of the

2   injunction's provisions.  See Winter,555 U.S. at 20.  In

3   particular, the court is persuaded that a provision limiting the

4   types of photographs that can be placed upon affiliates' websites

5   is not sufficiently clear, and will modify the injunction to

6   address that concern.  Plaintiff, for its part, does not oppose

7   such a modification.  The court finds that certain other minor

8   modifications, such as the substitution of more qualified language

9   regarding the neutrality of affiliate website content, is

10  warranted.  A separate order with modified injunction language,

11  will, therefore, issue.

12      C.   Agency

13      Defendants also contend that the court erred in issuing a

14  preliminary injunction based on a negligence theory, despite the

15  fact that complaint alleges only intentional acts.  As an initial

16  matter, Defendants' characterization of the court's order is

17  questionable.  Defendants point to the court's statement that "A

18  principal is liable for his agent's negligence 'in the

19  transaction of the business of the agency,' . . . or where the

20  principal has authorized or ratified the agent's conduct." (Order

21  at 6, citing Ogala v. Chevron Corp., No. 14-cv-173-SC, 2014 WL

22  2089901 *3 (N.D. Cal. May 19, 2014) (citing Cal Civ. Code §§ 2338,

23  2339)).  That quote, though perhaps not entirely clear, refers to

24  liability principles concerning both agents' negligent actions and

25  intentional torts.  In other words, principals may be liable for

26  their agents' negligent actions within the scope of the agency, as

27  well as for certain other, intentional acts, even those outside the

28

scope of the agency, that are subsequently ratified by the
principal.

The court's order was primarily concerned with whether an
agency relationship existed between Regal and its affiliates, and
not whether affiliates engaged in negligent acts as opposed to
intentional ones.  That distinction is not particularly important
in this case.  Defendants argue otherwise, contending that the
distinction is crucial because principals are cannot be held liable
for agents' intentional acts unless the principal ratifies those
acts.

Defendants are mistaken.  California Civil Code Section 2238,
regarding "responsibility for agent's negligence or omission,"
includes principal liability for "wrongful acts committed by such
agent in and as a part of the transactions of such business, and
for his willful omission to fulfill the obligations of the
principal."  This language encompasses intentional acts.  Principal
liability attaches where the intentional tort is an "outgrowth" of
the employment is foreseeable, "in the sense that the employment is
such as predictably to create the risk employees will commit
intentional torts of the type for which liability is sought."
Kephart v. Genuity, Inc., 136 Cal.App.4th 280, 293 (2006) (internal
quotation omitted).

Defendants appear to rely on California Civil Code Section
2339, which states, with regard to "principal's acts for wrongs
willfully committed by the agent," that a principal is only liable
under the section if he authorizes or ratifies the principal's
acts.  This section applies, however, to agents' intentional acts
outside the scope of the agency.  In other words, Section 2239

8

1  shields the principal from liability, absent ratification, "when an
2  employee's misconduct does not arise from the conduct of the
3  employer's enterprise, but instead arises from a personal dispute."
4  Id. at 292.  In any event, even if ratification were required to
5  hold Defendants liable for their agents' intentional acts,
6  Defendants here arguably have ratified those acts by paying
7  affiliates for their lead and sales generating efforts, even when
8  those efforts included dissemination of false and disparaging
9  statements.

10            D.  Changed Circumstances

11       Lastly, Defendants argue that no injunction should issue, or
12  that the injunction should be significantly modified, as a result
13  of changed circumstances.  Most notably, Defendants have retained
14  an outside monitoring firm, have hired a new, experienced General
15  Counsel, have terminated 2,100 affiliates from the Regal Affiliate
16  program, and have changed the provisions of the agreement between
17  Regal and its affiliates.

18       Of these, the court finds the changes to the Affiliate
19  Agreement most significant.  Indeed, the "locked-in" nature of
20  Regal affiliates was a major factor in the court's prior conclusion
21  that Regal's affiliates are its agents.  Defendants now claim that
22  they encourage affiliates to work for multiple companies, and that
23  12% of affiliates in fact do so.

24       Though the court welcomes Defendants' changes to the
25  agreement, the new agreement does not change the fundamental nature
26  of the relationship between Regal and its affiliates.  Unlike the
27  affiliates at issue in Routt v. Amazon.com, Inc., 584 Fed.Appx. 713
28  (9th Cir. 2014) (unpublished disposition), Regal affiliates are, in

essence, sales agents working on commission.  Indeed, Regal affiliates earn commissions for generating sales for Regal, as well as for providing certain leads, regardless of whether those leads result in sales.  No matter whether Regal has 2,000 affiliates or 200, so long as Regal pays affiliates to generate sales, it cannot avoid liability for affiliates' actions in pursuit of that goal. Furthermore, to the extent Regal suffers its agents to continue to disseminate false or misleading information, such as by allowing agents who post  to remain in the affiliate program and/or continuing to pay those agents for generating leads and sales for Regal, Regal may be subject to punitive damages.

**IV.   Conclusion**

For the reasons stated above, Defendants' Motion are GRANTED in part and DENIED in part.  The court has reconsidered its order granting a preliminary injunction.  The court again concludes, however, that a preliminary injunction is warranted, albeit with some modifications.  The injunction is STAYED for a further thirty days, so as to allow Defendants to take any further steps they deem necessary.  The stay shall expire on January 29, 2015, at which time the injunction, delineated by separate order of this court, will take effect.

**IT IS SO ORDERED.**

Dated: December 30, 2014

DEAN D. PREGERSON
United States District Judge